UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARLISLE FOOD SERVICE PRODUCTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:11CV16 CDP |
| YENZER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Defendant Sandstone Group, Inc., a Wisconsin corporation, challeges this Court's personal jurisdiction over it, arguing that it has no significant contacts with the state of Missouri. Because plaintiff has failed to make a prima facie showing that exercising personal jurisdiction over Sandstone would be proper, I will grant the motion and dismiss Sandstone as a defendant in this case.

## Background

Carlisle Food Service Products, Inc. originally filed this case in the United States District Court for the District of Connecticut against Anthony Yenzer and Larry Colvin. Yenzer and Colvin are former employees of Carlise and current employees of Alluserv, LLC. The Connecticut District Court granted Yenzer and Colvin's motion to transfer the case to this Court, and the case was eventually assigned to me. After the case was transferred to this District, Carlisle amended

its complaint. The amendment added counts against the original defendants and added three new defendants: Jay Mittler, another former Carlisle employee now working at Alluserv; Alluserv; and Sandstone Group, Inc., Alluserv's parent corporation. The counts alleged against Alluserv and Sandstone include: (1) misappropriation of trade secrets, (2) violation of the Connecticut and Missouri Uniform Trade Secrets Acts, (3) violation of the Connecticut Unfair Trade Practices Act, (4) unfair competition, (5) tortious interference with contact, and (6) civil conspiracy. Sandstone then filed this motion to dismiss alleging lack of personal jurisdiction, and the other defendants answered the complaint.

## **Discussion**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction is proper. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (internal citations omitted). The plaintiff may rely on affidavits, exhibits, or other evidence to establish its prima facie case. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). The Court views the evidence in the light most favorable to plaintiff and resolves factual conflicts in plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Even so, the plaintiff must produce some evidence; conclusory allegations are insufficient. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004). The

plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendant] can be subjected to jurisdiction within the state." *Id.* at 1072 (internal quotations and citation omitted).

To exercise personal jurisdiction over a nonresident defendant, I must determine (1) whether that defendant is subject to the forum state's long-arm statute and (2) whether the exercise of personal jurisdiction would comport with due process. *Romak*, 384 F.3d at 984. In Missouri the long-arm statute providing for jurisdiction over foreign defendants is Mo. Rev. Stat. 506.500. Both the Missouri Supreme Court and the Eighth Circuit have held that the Missouri legislature intended to extend jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process clause. *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)). Thus, I need only consider whether the exercise of jurisdiction would comport with due process. *Clune*, 233 F.3d at 541.

Due process does not support the exercise of personal jurisdiction by a state over a nonresident who has no meaningful contacts or ties to that state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). "Due process requires minimum contacts between a nonresident defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Steinbuch*, 518 F.3d at 585 (internal quotations and citation

omitted). These contacts must be such that the defendant "should reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "The minimum contact inquiry focuses on whether the defendant [has] purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." *Steinbuch*, 518 F.3d at 586 (internal citation omitted). The defendant's contacts must be more than "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In determining whether a nonresident defendant's contacts with Missouri are sufficient I must considers five factors, the first three of which are the most important: (1) the nature and quality of the contacts with the forum state; (2) the quantity of such contacts; (3) the connection of the cause of action to the contacts; (4) the interest of the forum state in the litigation; and (5) the convenience or inconvenience to the parties. *Steinbuch*, 518 F.3d at 586. With respect to the third factor, the Supreme Court has differentiated between specific and general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Specific personal jurisdiction over a nonresident defendant is proper where the cause of action arises from, or is connected to, the defendant's contacts with the forum state. *Burger King*, 471 U.S. at 463; *Dever*, 380 F.3d at 1073. General personal jurisdiction, however, requires "continuous and systematic"

contacts with a forum state and allows personal jurisdiction even where the cause of action or alleged injury is unrelated to those contacts. *Steinbuch*, 518 F .3d at 586 (internal citation omitted).

Sandstone was incorporated and has its principal place of business in Wisconsin. According to the declaration filed in support of its motion, it has no office, property, or employees in Missouri, and does no business in Missouri. After Sandstone challenged jurisdiction, Carlisle was required to present a prima facie case establishing that personal jurisdiction was proper, but it has merely rested on conclusory allegations with no testimony, affidavits, or other documents to support those allegations.

Paragraph 79 of Carlisle's amended complaint alleges, on information and belief, that Allusev and Sandstone "knowingly and intentionally misappropriated . . . trade secrets, knew or should have know that the [employees'] knowledge of . . . trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy" and is "using these misappropriated . . . trade secrets for their own benefit." Paragraph 87 alleges that all defendants "committed unfair and deceptive acts or trade practices." Paragraph 108 alleges that, on information and belief, that "Alluserv acted on its own behalf or on the behalf of or at the direction of Sandstone." Count XI alleges that all defendants participated in a civil conspiracy. Carlisle's brief goes on to claim that Sandstone "recruited away

Yenzer, Colvin and Mittler to work for Alluserv." Because Alluserve is a Missouri corporation and Yenzer, Colvin, and Mittler were employed in Missouri, these allegations would warrant an assertion of specific personal jurisdiction over Sandstone if they were true. None of the evidence submitted to me or reasonable inferences drawn from that evidence, however, supports these allegations.

Carlisle's own timeline shows that the company that is now known as Alluserv was formed before the former employees' departure from Carlisle which lessens any argument that Sandstone must have recruited them because Alluserv didn't yet exist. Carlisle has submitted documents showing that Alluserv and Sandstone have the same president, Joe Carlson. But, Carlson's declaration states that he introduces himself as President of Alluserv when doing business for Alluserv, and he introduces himself as President of Sandstone when doing business for Sandstone. Additionally, the former employees work for Alluserv, not for Sandstone. Sandstone has also stated, in defending against the claim of misappropriation of trade secretes, that it does not develop or sell any products. Carlisle has shown nothing to indicate that Sandstone did anything related to this case in Missouri.

Because Carlisle has not established a prima facie case of specific personal jurisdiction, I must consider whether general personal jurisdiction exists and determine whether Sandstone has systematic and continuous contacts with

Missouri. Paragraph 35 of Carlisle's amended complaint alleges, again, on information and belief, that Sandstone "owns, controls and/or directs the activities of . . . Alluserv." Carlisle's brief goes on to claim that Sandstone "appears to be the sole member of Alluserv" and that Sandstone may control other subsidiaries it owns in Missouri. Again, the evidence shows that Alluserv and Sandstone have the same president. In an attempt to argue that all of the subsidiaries are intertwined with and controlled by Sandstone, Carlisle also submitted Alluserv financing statements mailed to another Sandstone subsidiary outside Missouri. Carlisle submitted amendments to Alluserv's articles of incorporation signed by one of the Sandstone directors, Thomas Kammerait. Finally, Carlisle submitted a blog entry on the Alluserv website written by Michael Egan, the Chief Director of Design at Sandstone.

The doing business of a subsidiary, even a wholly owned subsidiary, is not sufficient by itself to confer jurisdiction on its parent corporation. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, (1925)). And "whether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent." *Steinbuch*, 513 F.3d at 589 (*citing* Epps, 327 F.3d at 649). The issue is not whether two employees are common to Alluserv and Sandstone, where mail is being sent, or who is submitting to whose blog. In order to establish

that personal jurisdiction over a parent corporation is proper, "the plaintiff must show that the parent dominates and controls the subsidiary." *Steinbuch*, 513 F.3d at 589 (*citing* Epps, 327 F.3d at 649). Although the documents submitted show a connection between Sandstone and Alluserv, this is no more than would be expected between any parent company and its subsidiary. More is required to establish the level of domination and control necessary to establish that Alluserv is the alter ego of Sandstone. *See Steinbuch*, 518 F.3d at 589 (internal citation omitted). Sandstone's declaration indicates that the bank accounts of the two entities are separate and that corporate formalities are observed. As stated earlier, the president of the two companies stated that he is clear about which of the two companies he represents when doing business. Nothing Carlisle has submitted supports an inference to the contrary.

Sandstone's ownership of other companies in Missouri is not relevant to the exercise of personal jurisdiction in this case. There is no evidence to support the proposition that Sandstone dominates or controls any of its subsidiaries. Only Sandstone's ownership of Alluserv creates a contact relevant to this cause of action and without evidence that Sandstone dominates and controls Alluserv, even that contact is insufficient to confer jurisdiction. Bare allegations, without facts sufficient to support them, fall woefully short of establishing a prima facie case of personal jurisdiction. *Cf. Anderson v. Dassault Aviation*, 361 F.3d 449, 453-455

(holding that personal jurisdiction over a parent company based on the activities of its subsidiary was proper where the evidence conclusively established that the parent corporation's connection to the forum state, including manufacturing the product its subsidiary sold and boasting a presence in the United States in its annual report, was more then mere ownership).

Here, Carlisle does not even allege that Sandstone has significant contacts in Missouri, instead its argument seems to be that Sandstone *might* have significant contacts if a series of inferences are drawn. Although all facts and inferences are to be drawn in favor of the plaintiff on a motion to dismiss for lack of personal jurisdiction, this series of inferences, when taken together, is unreasonable.

Carlisle asks that if I am not satisfied that personal jurisdiction over Sandstone is proper I grant it time to conduct "broad jurisdictional discovery" because it suspects that Sandstone "may yet" be subject to personal jurisdiction in Missouri. "When a plaintiff offers only speculation or conclusory assertions about contacts with the forum state, a court is within its discretion to deny jurisdictional discovery." *Dever*, 380 F.3d at 1076. I will not authorize a fishing expedition without any evidence beyond the speculation and conclusions offered here.

Accordingly,

**IT IS HEREBY ORDERED** that Sandstone's motion to dismiss for lack of subject matter jurisdiction [#54] is **GRANTED**, and plaintiff's claims against Sandstone are dismissed without prejudice for lack of personal jurisdiction.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of April, 2011.